544 S.E.2d 620

Alvin PINCKNEY and Silas Knight, Plaintiffs,

v.

Catherine C. WARREN; Andrana Jenkins; Gilda Graham; Benjamin Fripp; Lorraine Lewis; James Pinckney, Jr. a/k/a Scrappy Pinckney; D & S Development; Vivian Braswell; Ethel Dixon Redd; Harvey Dixon, Jr.; Betty Dixon Haynes; Madeline "Bunches" Miller; Harvey Pinckney; Mary Ervin Pinckney, a person non compos mentis; Charlotte Turner; Maude Adams; Charles Davis; Benjamin Mood, Jr.; Mildred M. Sloss; Oliver Mood; Bryant Lucas Mood; Dwayne F. Mood; Bonita Mood; Maria R. Young; Helen Jefferson; Isaac Jefferson; Rebecca J. Murdix; Linda M. Hanton; Juanita J. Green; Alvin Jefferson; Lylene Jefferson; Miriam J. Harris; Maxine J. Freeman; Benjamin Jefferson; Lucy J. Bellinger; Maude Jefferson; Matthew Green; Charles Green; George Pugh; Walter D. Pugh and Jamie Mae P. Wilson, if they or any of them be alive, and John Doe and Mary Roe, Adults, and Richard Roe and James Roe, infants, persons under disability or incompetent, if any, including those persons who might be in the Military Service, within the meaning of Title 50 United States Code, commonly referred to as the Soldiers and Sailors Relief Act of 1940, fictitious names designating the unknown heirs, devisees, distributees, issue, executors, administrators, successors, or assigns of the above named Defendants, if they or any of them be dead, also Lark Collins; Becky Rivers Collins a/k/a Binky

Rivers Collins; Phillip Collins a/k/a Fullard Collins; Susie Collins Pinckney; Carrie Collins Knight a/k/a Carrie Collins Knight Pinckney; Lawrence Rivers; Lizzie Rivers Bryant a/k/a Elizabeth Rivers Bryant; Agnes Rivers Pugh; Agnes Collins a/k/a Agnes Jenkins; Jake Pinckney; James Leonard Pinckney; Bernice Fripp; Edward Knight; Paul Knight; Clarence Knight; Marie Knight Dixon a/k/a Miriam Knight Dixon; Harvey Dixon; Lillian Bryant Leasayers; Gertrude Bryant Moughn; Lethonia Bryant Mood; Benjamin Mood, Sr.; Lucas Mood; Maggie Rivers Jefferson a/k/a Maggie Rivers Jefferson Green; Walter Jefferson, Jr.; Lloyd Jefferson; James Franklin Pugh, deceased, and also all other persons unknown, claiming any right, title, estate in or lien upon the real estate described in the Complaint herein, Defendants,

of whom Benjamin Fripp and Lorraine Lewis are, Respondents,

and

D & S Development is Appellant.

No. 25271.

Supreme Court of South Carolina.

Heard Jan. 23, 2001.
Decided March 26, 2001.

Philip G. Clarke, III, of Bleecker & Clarke, LLC, of Charleston, for appellant.

Robert D. Fogel, of Legare, Hare & Smith, of Charleston, for respondents.

TOAL, Chief Justice:

D & S Development ("D & S") appeals the Master–in–Equity's decision that it does not have an interest in the property sold to it by James L. Pinckney, Jr. (a/k/a "Scrappy Pinckney"). The Master found Scrappy Pinckney did not have a valid interest in the property he sold to D & S because he was illegitimate and, therefore, not his father's heir at law. We affirm the decision of the Master.

## FACTUAL/PROCEDURAL BACKGROUND

Scrappy Pinckney was born on April 19, 1927. He is the son of James Leonard Pinckney and Maggie Richardson. In 1954, James Leonard Pinckney died intestate, leaving an estate that included approximately ten acres of land located in both Charleston and Berkeley County. Scrappy Pinckney's interest in this property is premised on his alleged status as an heir at law of his father. If he is James Leonard Pinckney's heir at law, he is one of the many heirs of Lark Collins, the original owner of the property.

The Collins family, the Respondents in this matter, acknowledge that Scrappy Pinckney is a lineal descendant of Lark Collins and the son of James Leonard Pinckney. However, the Collins family asserts that Scrappy Pinckney is not an heir at law who could inherit a property interest from his father because he was illegitimate.

In 1975, Donald Barkowitz and Sam Craven formed D & S, a general partnership, to purchase Scrappy Pinckney's property interest. D & S paid $775.00 for Scrappy Pinckney's partial interest in the property. A quit-claim deed was signed on April 14, 1975, and recorded on April 15, 1975. D & S has paid the *ad valorem* taxes on the property since the conveyance in 1975.

All parties to this action recognize that Scrappy Pinckney validly executed a conveyance of his interest, if any, to D & S. However, according to the Collins family, Scrappy Pinckney did not have a valid property interest to transfer to D & S because he is not James Leonard Pinckney's heir at law.

On October 25, 1989, the Collins family filed a declaratory judgment action in Charleston County to quiet title to real property, obtain a decree establishing the family history of Lark Collins, identify the owners of the property, and determine each owner's interest in the property. On October 26, 1989, the Collins family filed an identical action in Berkeley County. Both Complaints allege the conveyance to D & S was ineffective because Scrappy Pinckney was illegitimate, and, therefore, not an heir at law of James Leonard Pinckney.

The two actions were consolidated and referred to the Honorable Louis E. Condon, the Master–in–Equity for

Charleston County, for entry of a final order with direct appeal to this Court. D & S and Scrappy Pinckney filed a joint Answer to the consolidated actions on May 7, 1991. The Answer admitted the facts contained in the Complaint and alleged an effective conveyance to D & S.

On November 25, 1991, the Master established the family history of Lark Collins. The Master confirmed Scrappy Pinckney was a lineal descendant of Lark Collins, but reserved the question of Scrappy Pinckney and D & S's rights in the property.

On February 22, 1999, this matter was tried before the Honorable Roger M. Young, Master–in–Equity for Charleston County, to determine the extent of D & S's interest in the property. On March 11, 1999, the Master denied D & S's claim and found Scrappy Pinckney's claimed property interest, which he sold to D & S, should be awarded to Lorraine Lewis and the heirs of Bernice Pinckney Fripp, members of the Collins family. On June 8, 1999, D & S filed a Rule 59(e), SCRCP Motion, which was denied. D & S appealed the Master's decision.

The following issues are before this Court on appeal:

I.   Did the Master err by requiring that Scrappy Pinckney's paternity, though admitted by the parties, be established by court order or by instrument signed by James Leonard Pinckney, Scrappy Pinckney's father?

II.  Did the Master err in disregarding the plain language of Scrappy Pinckney's birth certificate by finding his parents were not married at the time of his birth?

## LAW/ANALYSIS

In an appeal from an action in equity, this Court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Doe v. Clark,* 318 S.C. 274, 457 S.E.2d 336 (1995). However, this broad scope of review does not require an appellate court to disregard the findings below or ignore the fact that the trial judge is in the better position to assess the credibility of the witnesses. *Dorchester County Dep't of Soc. Servs. v. Miller,* 324 S.C. 445, 477 S.E.2d 476 (Ct.App.1996). Moreover, the appellant is not relieved of

his burden of convincing the appellate court the trial judge committed error in his findings. *Id.*

## I. Scrappy Pinckney's Legitimacy

D & S argues the Master erred by finding Scrappy Pinckney did not have a property interest because he was not James Leonard Pinckney's heir at law. D & S argues that where all parties to an action admit the paternity of an illegitimate child by the father, the *Mitchell v. Hardwick,* 297 S.C. 48, 374 S.E.2d 681 (1988) requirement that paternity must be conclusively established by either a court order issued prior to the father's death or by an instrument signed by the father acknowledging paternity does not apply. We disagree. First, we will address whether Maggie Richardson and James Leonard Pinckney were married at the time of Scrappy Pinckney's birth in 1927. Next, we will discuss whether Scrappy Pinckney could inherit from his father as an heir at law under South Carolina law.

### A. Maggie Richardson and James Leonard Pinckney's Marital Status

In this case, there is no single trial exhibit or witness that conclusively establishes Scrappy Pinckney's legitimacy. The Master found Scrappy's parents were not married at the time of his birth based on the testimony of Lorraine Lewis and Silas Knight, two of Scrappy Pinckney's family members. We agree with the Master's findings.

Lorraine Lewis' testimony is the most convincing evidence of James Leonard Pinckney and Maggie Richardson's marital status. Lorraine Lewis, Scrappy Pinckney's aunt, lived in the same home with Scrappy Pinckney for many years. She testified that Scrappy Pinckney's mother, Maggie Richardson, lived with her parents for a period of time preceding and subsequent to his birth. According to Lorraine Lewis, it was the practice of her parents not to allow any of their children, if unmarried, to sleep with a member of the opposite sex in their home. She claims that when Maggie Richardson stayed with her family, her parents made Maggie Richardson sleep in the bedroom, while James Leonard Pinckney would sleep on the couch. According to Lorraine Lewis and Silas Knight, James

Leonard Pinckney and Maggie Richardson were never married. Furthermore, there was no evidence presented by any of the witnesses that Maggie Richardson and James Leonard Pinckney were known to live together, either as husband and wife or otherwise.

Also presented as evidence of Scrappy Pinckney's illegitimacy were three statements from the Probate Courts of Charleston, Berkeley, and Dorchester Counties. Each county reviewed their marriage records through 1927 and found no record of a marriage license between James Leonard Pinckney and Maggie Richardson. The absence of a marriage license does not prove the absence of a valid marriage, particularly when only three South Carolina counties were searched. The Master acknowledges that "[w]hile the absence of a license does not render the marriage illegal, the Court would note that the absence of a piece of evidence that would ordinarily be available can be considered as evidence of the non-existence of the fact or facts that such a document would otherwise attest to." The Master found the absence of a marriage license further substantiated the testimony of Lorraine Lewis and Silas Knight that Scrappy Pinckney's parents were not married at the time of his birth. The other evidence of Scrappy Pinckney's illegitimacy was Maggie Richardson's funeral bulletin. Her obituary lists all of her surviving family members, which included two daughters, two sons-in-law, two grandsons, three sisters, several nieces, nephews, and cousins. The obituary did not acknowledge a marriage between Maggie Richardson and James Leonard Pinckney, and did not acknowledge Scrappy Pinckney as Maggie Richardson's son.

As evidence of James Leonard Pinckney and Maggie Richardson's marital status, D & S presented a copy of Scrappy Pinckney's birth certificate and two hearsay statements by acquaintances who believed James Leonard Pinckney and Maggie Richardson were married. The birth certificate identifies Scrappy Pinckney's father as "James Pinckney" and his mother as "Maggie Pinckney." According to D & S, the names on the birth certificate indicate Scrappy Pinckney's parents were married at the time of his birth because his father and the mother have the same last name. However, the birth certificate was only signed by the midwife, it was not signed by either James Leonard Pinckney or Maggie Richard-

son. The Master did not find the birth certificate persuasive proof of legitimacy based on the Court of Appeals' recent decision in *Freeman v. Freeman,* 323 S.C. 95, 473 S.E.2d 467 (Ct.App.1996) (holding a birth certificate is not conclusive proof of paternity under the *Mitchell* test) (see discussion below).

The Master found the testimony of Scrappy Pinckney's family members, Lorraine Lewis and Silas Knight, more persuasive than the evidence presented by D & S. Lorraine Lewis and Silas Knight provided direct testimony concerning Maggie Richardson and James Leonard Pinckney's marital status. Both family members knew Scrappy Pinckney well and lived close to him all of his life. We agree with the Master that the family member's direct testimony, in conjunction with the absence of a marriage license and the obituary, indicates Scrappy Pinckney's parents were not married when he was born in 1927.

## B. Scrappy Pinckney's Right to Inherit

In 1954, when James Leonard Pinckney died intestate, illegitimate children could not inherit from their fathers in South Carolina because they were not regarded as their father's heirs at law. *See* S.C.Code Ann. § 21–3–30 (1976).[1] In 1977, the United States Supreme Court in *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), held an Illinois statute that denied an illegitimate child inheritance from its father was an unconstitutional violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because of its disparate treatment of

---

1. Under current statutory law, even if a child is illegitimate, he can inherit from his father's estate if:

    (i) the natural parents participated in a marriage ceremony before or after the birth of the child, even though the attempted marriage is void; or

    (ii) the paternity is established by an adjudication commenced before the death of the father or within the later of eight months after the death of the father or six months after the initial appointment of a personal representative of his estate and, if after his death, by clear and convincing proof, except that the paternity established under this subitem (ii) is ineffective to qualify the father or his kindred to inherit from or through the child unless the father has openly treated the child as his and has not refused to support the child.

    S.C.Code. Ann. § 62–2–109 (Supp.2000).

legitimate and illegitimate heirs. In *Wilson v. Jones,* 281 S.C. 230, 314 S.E.2d 341 (1984), this Court adopted the rule enunciated in *Trimble* and held it should be applied prospectively only because retroactive application would "disrupt the orderly process of probate." *Id.* at 232, 314 S.E.2d at 343. Therefore, only those illegitimate children whose fathers died after April 26, 1977, the date of the *Trimble* decision, could inherit from their father's estates. *Id.*

In 1988, this Court in *Mitchell v. Hardwick,* 297 S.C. 48, 374 S.E.2d 681 (1988) modified *Wilson* to allow limited retroactive application of *Trimble* where certain factors are met. Changes in the law are usually prospective, not retroactive. However, the Court was persuaded by the West Virginia Supreme Court who addressed the same issue and found that "retroactivity may be extended . . . in a way that justly and fairly reconciles the constitutional interests in equality recognized in the new rule of law with reliance and finality interests founded upon the former law." *Williamson v. Gane,* 176 W.Va. 443, 345 S.E.2d 318, 320 (1986). The Court modified *Wilson* to allow retroactive application of the *Trimble* decision in the limited circumstances where the following conditions are met: (1) innocent persons will not be adversely affected because of their detrimental reliance on the old inheritance rules; (2) the paternity of the child had been conclusively established either by court order or decree issued prior to the death of the father or by an instrument signed by the father acknowledging paternity; and (3) the estate administration is subject to further resolution. *Mitchell,* 297 S.C. at 51, 374 S.E.2d at 683.

In *Mitchell,* a father died intestate leaving as heirs at law two adopted daughters. His son petitioned the lower court for the partition of his father's estate property on the ground he was his father's illegitimate son. *Id.* at 49, 374 S.E.2d at 682. The Court found paternity was undisputed because of the testimony of several family members, the physical resemblance between father and son, and most importantly, a deed signed and recorded by the father that specifically acknowledged the parent-child relationship. *Id.* at 49, 374 S.E.2d at 682. The Court found the deed satisfied the paternity requirement because it was an instrument signed by the father acknowledging paternity. Because all three *Mitchell* factors

were satisfied, this Court allowed the illegitimate son to recover from his father's estate even though the father died prior to the *Trimble* decision.

The Court of Appeals further addressed the retroactive application of *Trimble* in *Freeman, supra.* The Court of Appeals .held that despite persuasive evidence of paternity, *Mitchell* requires that paternity be conclusively established by either a court order issued prior to the father's death or by an instrument signed by the father acknowledging paternity. In *Freeman,* the child could not meet the strict requirements of *Mitchell,* but she could produce a birth certificate with her biological father's name on it. *Id.* at 103, 473 S.E.2d at 472. The Court of Appeals adhered to the strict requirements of *Mitchell,* held the birth certificate did not conclusively establish paternity, and found the child was not her father's heir at law. *Id.* The only difference between the instant case and *Freeman* is that paternity is not contested by the family. However, *Freeman* demonstrates a birth certificate cannot be used in lieu of the specific documents required by *Mitchell.* In the instant matter, the first and third *Mitchell* requirements are satisfied because there is no evidence an innocent person would be adversely affected by detrimentally relying on the old inheritance laws, and there is no evidence James Leonard Pinckney's estate was probated. The insurmountable problem Scrappy Pinckney confronts is the second *Mitchell* factor—the conclusive proof of paternity. While no party challenges Scrappy Pinckney is James Leonard Pinckney's son, there is no evidence of a court order establishing paternity or of an instrument signed by James Leonard Pinckney acknowledging Scrappy Pinckney's paternity prior to his death. While the record contains persuasive evidence Scrappy Pinckney was James Leonard Pinckney's son, *Mitchell* prevents Scrappy Pinckney from inheriting from James Leonard Pinckney because *Trimble* can have retroactive effect in South Carolina only if all three *Mitchell* factors are satisfied.

We find the rules in *Mitchell* and *Freeman* control in this case even though the family members did not contest paternity. Public policy demands the strict adherence to the *Mitchell* requirements. Fraudulent assertions of paternity will be much less likely to succeed, or even to arise, where proof of paternity must be established by either a court order issued

prior to the father's death or by an instrument signed by the father. *See Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978) (holding public policy supports a rule where paternity must be established by an order of filiation issued during the putative father's lifetime for an illegitimate child to recover as an heir at law). Furthermore, if we adopted the rule D & S advocates, we would create a great uncertainty for title abstractors because an action seeking to add heirs could be brought at any time. A purchaser would have to bring a quiet title action every time he purchases property in order to ensure good title.

Unfortunately, under this rule, some children will not inherit from their biological fathers simply because they do not possess the specific documents required by *Mitchell.* However, in addressing a similar paternity requirement in New York, the United States Supreme Court in *Lalli* found that certain children will not be able to inherit from their biological fathers even though their paternity is not disputed. While this may be unfortunate, the United States Supreme Court found the strict paternity requirement was necessary, as a matter of public policy, to prevents spurious claims. *Id.*

We find the *Mitchell* requirements promote stability and prevent both fraudulent challenges to, and fraudulent assertions of, paternity. We, therefore, uphold the *Mitchell* rule and find that Scrappy Pinckney cannot inherit as James Leonard Pinckney's heir at law.

## II. Birth Certificate

■ D & S argues the Master disregarded the plain language of Scrappy Pinckney's birth certificate when he found Scrappy Pinckney's parents were not married at the time of his birth. We disagree.

The Master, who was in the best position to judge the credibility of the witnesses and the evidence, found Lorraine Lewis and Silas Knight's testimony more persuasive than the birth certificate. First, the birth certificate was contradicted by every piece of direct testimony in the record. Second, the Court of Appeals recently held in *Freeman* that in order for *Trimble* to have retroactive effect, paternity must be conclusively established by the specific documents required in

*Mitchell. Freeman, supra.* Finally, birth certificates, unlike marriage licenses, are not intended or designed to constitute proof of a marriage.

### CONCLUSION

We find Scrappy Pinckney is not James Leonard Pinckney's heir at law under South Carolina law. We, therefore, **AFFIRM** the decision of the Master, which awarded Scrappy Pinckney's claimed property interest to Lorraine Lewis and the heirs of Bernice Pinckney Fripp.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.