THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Ben Rabon and Cynthia Rabon, Respondents,
v.
South Carolina Department of Highways and Public Transportation, South Carolina Insurance Reserve Fund, and American Southern Insurance Company,
Appellants.
 
 
 

Appeal From Richland County
Alison Renee Lee, Circuit Court Judge

Unpublished Opinion No. 2006-UP-251
Heard April 5, 2006  Filed May 19, 2006

AFFIRMED

 
 
 
Andrew F. Lindemann, of Columbia, for Appellants.  
Dennis N. Cannon, Jr., of Camden, for Respondents.
 
 
 

PER CURIAM:  The South Carolina Department of Highways and Public Transportation appeals the trial courts order enforcing a settlement agreement.  We affirm.  
FACTS
Ben Rabon and his wife, Cynthia, brought a claim against the department for injuries Ben sustained in an automobile accident involving an employee of the department.  The department was insured by the South Carolina Insurance Reserve Fund.  American Southern Insurance Company was the Insurance Reserve Funds servicing reinsurer (hereinafter collectively referred to as the department).  
On August 17, 1994, the Rabons and Carroll Barwick, a claims adjuster engaged by the department, attended a settlement conference.  At the conference, the parties agreed to settle the Rabons claim for a lump sum of $25,000 and an annuity of $650 per month for fifteen years.  The Rabons signed a handwritten document containing these terms.  The document was not signed by Barwick or any representative from the insurance company.  Galaher Settlements Company, a structured settlement company engaged by American Southern to administer the settlement, confirmed the above settlement terms with American Southern by letter dated August 18, 1994.  
Following the conference, the Rabons had misgivings about the agreement.  Ben testified that, within the next day or two, Cynthia called Barwick to explain their dissatisfaction.  Cynthia testified she called Barwick just a couple of days after the conference.  Cynthia allegedly asked Barwick whether the insurance company could either provide more money up front or extend the annuity payments.  Cynthia testified Barwick said he would speak with the other parties about the Rabons concerns.  Barwick testified he did not specifically recall speaking with the Rabons about changing the agreement.  
The Rabons received a $25,000 check issued August 19, 1994 as the lump sum portion of the settlement.  They marked out the language on the check indicating final settlement and negotiated the check.  The Rabons and William Lynch, a representative of American Southern, initialed the modification.  
On September 13, 1994, the Rabons received a proposed settlement agreement via facsimile from Barwick.  The proposed agreement provided for the $25,000 lump sum payment and monthly payments of $650 for twenty years.  On September 15, 1994, the Rabons met at Barwicks office to sign the agreement.  Ben testified they went over the entire agreement together word for word.  Cynthia testified they reviewed the agreement thoroughly and she was sure that the change from fifteen to twenty years was discussed, although she could not say specifically that that happened.  The Rabons and Barwick signed the agreement.  
By letter dated September 20, 1994, Barwick transmitted the agreement to Galaher Settlements and copied Lynch.  On December 24, 1994, Galaher notified Barwick that the contract mistakenly provided for periodic payments for twenty years rather than fifteen years.  The Rabons were not notified of the alleged mistake.  
On September 8, 1997, Galaher sent a letter to American Southern indicating the periodic payments were incorrectly stated on the agreement and the annuity contract would not be issued until the appropriate corrections were made.[1]  The letter contained lines for Barwick, Ben Rabon, and American Southern to sign to confirm the mistake.  Ben did not sign the September 8, 1997 letter.  
By letter dated February 18, 1998, Galaher advised Ben that the annuity would not be issued until he signed a letter agreeing that the annuity term should have been $650 per month for fifteen years.  Ben did not sign this letter.  
In January of 1999, Galaher notified American Southern that after several failed attempts to secure Bens signature, the policy would be issued with the existing documentation.  A copy of the annuity contract, the agreement, a surety bond, and a Uniform Qualified Assignment were enclosed.  A copy of the letter was sent to Ben.  
On March 16, 1999, the Rabons informed American Southern of their disagreement with the contents of the January 1999 letter and that they were standing by the terms of the September 15, 1994 agreement.  The Rabons received no response.  
Sometime in 2001, Ben sought to have his monthly annuity payments deposited directly into his checking account.  At that time, Ben obtained a copy of the annuity contract.  The contract authorized only fifteen years of monthly payments.  
In August of 2002, the Rabons commenced this action seeking specific performance of the September 15, 1994 agreement.  The department counterclaimed for reformation as a result of a mutual mistake.  The trial court found no mutual mistake and rejected the departments equitable defenses.  The court ordered the department to specifically perform the terms of the agreement.  
STANDARD OF REVIEW
An action for specific performance is an equitable action.  Ingram v. Kaseys Associates, 340 S.C. 98, 105, 531 S.E.2d 287, 290 (2000).  An action to reform or set aside a written instrument based upon mutual mistake is also an action in equity.  Gecy v. Prudential Ins. Co. of America, 273 S.C. 437, 441, 257 S.E.2d 709, 711 (1979).
In an action in equity, tried by the judge alone, this court has jurisdiction to find facts in accordance with its views of the preponderance of the evidence. 
Settlemeyer v. McCluney, 359 S.C. 317, 320, 596 S.E.2d 514, 516 (Ct. App. 2004).  However, this broad scope of review does not require an appellate court to disregard the findings below or ignore the fact that the trial judge is in the better position to assess the credibility of the witnesses. 
Pinckney v. Warren, 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001).  

LAW/ANALYSIS

 I.  Mutual Mistake
 The department contends the trial court erred in ordering specific performance of the terms of the September 15, 1994 agreement because the agreement was a result of a mutual mistake.  We disagree.  
 [A] contract may be avoided or reformed on the ground of mutual mistake of fact where the mistake is common to both parties and, by reason of it, each has done what neither intended. 
 Chet Adams Co. v. James F. Pedersen Co., 308 S.C. 410, 413, 418 S.E.2d 337, 339 (Ct. App. 1992).  However, [b]efore equity will reform an instrument, it must be shown by evidence which is most clear and convincing not simply that it was a mistake on the part of one of the parties but that it was a mutual mistake.  Sims v. Tyler, 276 S.C. 640, 642, 281 S.E.2d 229, 230 (1981).  
 In our view the evidence does not demonstrate a mutual mistake.  There is no clear and convincing evidence the Rabons mistakenly agreed to the terms of the September 15, 1994 agreement.  First, the rudimentary handwritten note resulting from the August 17, 1994 settlement conference indicates the parties anticipated a more refined document would follow.  Also, the record indicates the Rabons believed the August 17, 1994 proposal was not final.  This understanding is evidenced by their testimony and further supported by the Rabons eliminating language on the $25,000 check that indicated the lump sum payment was a final settlement.  Finally, the Rabons testified they knew the September 15, 1994 agreement provided them with twenty years of monthly annuity payments and agreed to the settlement based on these terms.  Thus, the record does not support a finding of a mistake on the Rabons part even if there was a unilateral mistake on the part of the department.  Accordingly, we hold the trial court did not err in finding no mutual mistake.  
II.  Laches
 The department and the Rabons each raised the equitable defense of laches.  The department argues the trial court erred in finding laches barred the departments reformation counterclaim but did not bar the Rabons claim for specific performance.  We disagree. 
 Whether a claim is barred by laches is to be determined in light of the facts of each case.  Arceneaux v. Arrington, 284 S.C. 500, 503, 327 S.E.2d 357, 358 (Ct. App. 1985).  To prove laches, a party must establish:  (1) delay, (2) unreasonable delay, and (3) prejudice.  Hallums v. Hallums, 296 S.C. 195, 199, 371 S.E.2d 525, 528 (1988).  The court is vested with wide discretion in determining what is an unreasonable delay. 
 Chambers of South Carolina, Inc. v. County Council for Lee County, 315 S.C. 418, 421, 434 S.E.2d 279, 280 (1993).  
 We agree with the trial court that the Rabons claim for specific performance is not barred by laches because the Rabons failure to bring this action until August of 2002 does not constitute an unreasonable delay.  The record demonstrates the Rabons believed the September 15, 1994 agreement established the terms of the settlement and, thus, the Rabons had no reason to sue for specific performance.  The Rabons continued to receive monthly annuity payments pursuant to the agreement and were under no obligation to preempt the issue.  In fact, the Rabons may have been justified in delaying any cause of action until the department breached the agreement by ceasing payments after fifteen years.  We agree with the trial courts finding that laches does not bar the Rabons claim for specific performance.  
 III.  Other issues
 Based on our finding of no mutual mistake, we decline to reach the remaining issues:  1) the Rabons defense of laches; 2) the departments claim for reformation barred by equitable estoppel; and 3) the trial courts alleged error in finding the department precluded from reformation based on Barwicks failure to read the agreement.
 Based on the above, we find the trial court did not err in ordering the department to specifically perform the terms of the September 15, 1994 agreement.  The decision of the trial court is accordingly 
 AFFIRMED.
 GOOLSBY, HUFF, and STILWELL, JJ., concur.
 

[1]  The record indicates, however, that SAFECO Life Insurance Company issued an annuity on August 23, 1994.