**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Tracey Hines, Respondent,

v.

Tarsha Y. Alexander, Personal Representative of the Estate of Clarence Ceal Alexander, Appellant.

Appellate Case No. 2015-000330

_____

Appeal From Charleston County
J. C. Nicholson, Jr., Circuit Court Judge

_____

Unpublished Opinion No. 2016-UP-339
Submitted May 2, 2016 – Filed June 29, 2016

_____

**AFFIRMED**

_____

Ira David Levy, of Ira D. Levy, LLC, of Charleston, for Appellant.

Ashley G. Andrews, of LaFond Law Group, PA, of Charleston, for Respondent.

_____

**PER CURIAM:** Tarsha Y. Alexander (Tarsha), as personal representative of the estate of Clarence Ceal Alexander (Decedent), appeals the determination that Tracey Hines was an heir to Decedent's estate. She argues the circuit court erred in affirming the probate court, which determined Hines was entitled to inherit from

Decedent's estate although Decedent's paternity of Hines was not established within the statutory time frame of section 62-2-109(2)(ii) of the South Carolina Code (Supp. 2015). Additionally, Tarsha contends the probate court erred in finding a valid contract binding Clarence A. Alexander (Clarence) existed when he was not a party to any contract with Hines. We affirm.

Section 62-2-109 of the South Carolina Code states:

> *If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession* by, through, or from a person: . . . [A] person born out of wedlock is a child of the mother. That person is also a child of the father if . . . the paternity is established by an adjudication commenced before the death of the father or within the later of eight months after the death of the father or six months after the initial appointment of a personal representative of his estate . . . .

(Emphasis added).

In *Parker v. Parker*, our supreme court considered whether Virginia Ann Martin should be excluded as an heir pursuant to section 62-2-109. 313 S.C. 482, 485, 443 S.E.2d 388, 390 (1994). The decedent's widow filed for informal probate and appointment as the personal representative, and she listed the appellants and Martin as the children of the decedent. *Id.* at 484, 443 S.E.2d at 389. Almost four years after the decedent's death, the appellants filed a motion to exclude Martin as an heir pursuant to section 62-2-109. *Id.* The probate court denied the motion, finding no effort had been made to exclude Martin as an heir in any prior proceeding and determining Martin had a right to rely on the silence of the other heirs. *Id.* The circuit court affirmed, stating the personal representative and appellants did not dispute parentage "until well after the time for bringing such an action had passed." *Id.* at 484-85, 443 S.E.2d at 389. The circuit court further concluded an adjudication of paternity under section 62-2-109 was necessary only in those cases in which paternity was questioned. *Id.* at 484, 443 S.E.2d at 389.

Our supreme court agreed with the circuit court that a paternity action must be brought within the statutory time frame "if paternity is questioned by either the personal representative or other interested party." *Id.* at 486, 443 S.E.2d at 390. The supreme court determined no dispute regarding Martin's paternity arose within

the statutory time limit, finding the petition listing Martin as the decedent's daughter, "standing alone, [was] compelling evidence that the personal representative did not dispute . . . Martin's parentage, and therefore, that . . . Martin was not required to defend her parentage." *Id.* Our supreme court stated, "Commonly, the illegitimate heir must raise the issue to be included in the intestate succession of the father, but in the present instance, there was no need since the estate, through the personal representative, acknowledged at the outset . . . Martin's parentage." *Id.* In affirming the probate and circuit court's rulings, our supreme court concluded, "The plain meaning of the statute does not delineate which party must raise parentage as an issue; however, obviously the burden must rest with any party with an actual dispute about the parentage." *Id.*

Initially, we note Tarsha abandoned any challenge to the probate court's finding that Hines was the biological son of Decedent when she confirmed during the hearing on her motion to reconsider she intentionally was not disputing the finding that Hines was the biological child of Decedent. *See Hollins v. Wal-Mart Stores, Inc.*, 381 S.C. 245, 251, 672 S.E.2d 805, 808 (Ct. App. 2008) (finding an issue was not preserved for appellate review because the party "acquiesced in the trial court's ruling").

Furthermore, we find the probate and circuit courts correctly determined Hines should be included as an heir to Decedent's estate. The obituary for Decedent that Tarsha created listed Hines as one of Decedent's children and included Hines's children in the list of Decedent's grandchildren. We believe the obituary created an impression that Hines's parentage was not in dispute. *See Parker*, 313 S.C. at 486, 443 S.E.2d at 390 (finding the petition listing the illegitimate heir as the decedent's daughter, "standing alone, [was] compelling evidence that the personal representative did not dispute [the illegitimate heir's] parentage, and therefore, that [the illegitimate heir] was not required to defend her parentage"). We also find Tarsha, through the obituary, acknowledged at the outset Hines's parentage.[1] *See Parker*, 313 S.C. at 486, 443 S.E.2d at 390 ("Commonly, the illegitimate heir must

---

[1] Tarsha argues Hines was included in Decedent's obituary because she "was not interested . . . in disagreement at that time in the funeral home when they were coming up with [the obituary]." However, Tarsha did not attend the hearing in the probate court, and that information was made a part of the record through an argument by Tarsha's attorney. Thus, we cannot consider this argument. *See McManus v. Bank of Greenwood*, 171 S.C. 84, 89, 171 S.E. 473, 475 (1933) ("This court has repeatedly held that statements of fact appearing only in argument of counsel will not be considered.").

raise the issue to be included in the intestate succession of the father, but in the present instance, there was no need since the estate, through the personal representative, acknowledged at the outset [the illegitimate heir's] parentage."); *id.* (noting a paternity action must be brought within the statutory time frame "*if* paternity is questioned by either the personal representative or other interested party" and concluding the burden to raise parentage as an issue "must rest with any party with an actual dispute about the parentage" (emphasis added)).

Tarsha did not indicate she was disputing Hines's parentage until she wrote to him in November 2012 (the November 2012 Letter), after the statutory time frame for establishing paternity had passed.  In the November 2012 Letter, Tarsha stated she and Clarence would include Hines as an heir to Decedent's estate upon being provided conclusive DNA test results showing Hines was the biological child of Decedent.  Once Hines was aware Tarsha was contesting his paternity, he provided her with the results of a DNA test within two weeks.[2]  Thus, we find section 62-2-109 should not be used to bar Hines from inheriting from Decedent's estate in this case because Hines established paternity within a reasonable time after paternity was disputed.

Tarsha cites to *Pinckney v. Warren* for the proposition that "certain children will not be able to inherit from their biological fathers even [when] paternity is not disputed."  344 S.C. 382, 393, 544 S.E.2d 620, 626 (2001).  However, *Pinckney* dealt with a father who died at a time when illegitimate children were not permitted to inherit from their fathers in South Carolina.  *Id.* at 390, 544 S.E.2d at 625.  Although illegitimate children were later permitted to inherit from their fathers, those illegitimate children whose fathers died before 1977 were not permitted to inherit unless they could satisfy a three-part test.  *Id.* at 390-91, 544 S.E.2d at 625.  Hines was not required to comply with the three-part test applied in *Pinckney* because Decedent died after 1977; thus, we believe *Pinckney* is inapplicable and instead believe the holding of *Parker*—that a paternity action must be brought within the statutory time frame *if paternity is in dispute*—should apply.

---

[2] We note Hines filed his petition to be included as an heir in October 2012.  He stated during the probate hearing he "went down to the [p]robate [c]ourt . . . to file the papers because [he] received a phone call that [he] was supposed to receive some papers . . . [because Tarsha knew] she was supposed to have sent [him] a document or notify [him]."  Hines also stated Decedent's caregiver "pretty much informed [him] on what was going on" and he took action; however, it is not clear from the record when Hines spoke to Decedent's caregiver.

Moreover, Tarsha did not notify Hines of her appointment as personal representative and, thus, failed to comply with the mandate of section 62-3-705 of the South Carolina Code (Supp. 2015), which required her to inform "persons who have or may have some interest in the estate being administered" of her appointment within thirty days. Because Tarsha did not notify Hines of her appointment as personal representative, Hines was not put on notice that the statutory time frame of section 62-2-109 had begun to run.

Although Hines waited to file his petition for inclusion despite Tarsha not returning his phone calls for six to eight months, we do not believe Hines slept on his rights and would not be entitled to equitable relief as Tarsha contends. Rather, we find Hines would have sought to establish paternity within the statutory time frame of section 62-2-109 if he had been aware that his parentage was in dispute. Hines stated during the hearing before the probate court that he did not file his petition for inclusion earlier because he "figured [Tarsha] was going to notify [him] in the proper time because [they] . . . talked, [and he] didn't figure anything was wrong." Once Hines received Tarsha's November 2012 Letter requesting he submit the results of a paternity test, he acted promptly and provided the results to Tarsha within two weeks. Accordingly, when considering Tarsha's failure to notify Hines of her appointment, coupled with the fact that Hines's parentage was not disputed until after the deadlines imposed by section 62-2-109 had passed, we find it would be inequitable to use section 62-2-109 to bar Hines from inheriting from Decedent's estate.

Having determined Hines was entitled to inherit from Decedent's estate, we need not reach the question of whether a valid contract binding Clarence to its terms was created. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding appellate courts need not address remaining issues when the disposition of a prior issue is dispositive).

**AFFIRMED.**[3]

**LOCKEMY, C.J., and WILLIAMS and MCDONALD, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.