726 S.E.2d 215

**George WAY, Appellant,**

v.

**Mary WAY, Respondent.**

No. 4968.

Court of Appeals of South Carolina.

Heard March 12, 2012.
Decided May 9, 2012.

William Ceth Land, of Manning, for Appellant.

Stephen L. Hudson, of Columbia, for Respondent.

PER CURIAM.

George Way (Husband) appeals the family court's order granting him a divorce from Mary Way (Wife), arguing the family court erred in ordering him to pay Wife $20,000 as part of the equitable division of marital property and $500 per month in alimony. We affirm as modified.

## FACTS

Husband and Wife married in 1978 and separated in 2005 when Husband moved out. The parties had no children but incurred a great deal of debt. Complaining of Wife's spending habits, in July 2005, Husband filed an action for separate support and maintenance, which he later amended to request a divorce on the ground of one year's continuous separation. In response to Husband's petition for temporary relief, the family court entered an order preserving the status quo, with Wife retaining temporary possession of the marital home and Husband continuing to pay the mortgage, taxes, and insurance on it.

On August 14, 2007, the family court heard arguments. Both parties filed updated financial declarations showing monthly deficits. The primary issues were the division of debt, disposition of the parties' real property, and alimony.

### I. Marital Home

With regard to the marital home, the parties testified Husband received a one-acre lot of land from his family, whose land and homes surrounded the lot. For approximately eleven years after marrying, the parties lived in a double-wide mobile home on the lot. After Hurricane Hugo destroyed the mobile home, the parties took out a mortgage loan and built a

home in its place. Subsequently, Husband used defective concrete blocks to construct an unpermitted storage building, where he stored tools and equipment.

According to Husband, the county tax assessor valued the marital home and land at $73,100; adding the value of the unpermitted building, Husband valued the property at approximately $75,000. By contrast, Wife believed the home was worth $110,000 and the outbuilding was worth an additional $30,000. At the time of the hearing, the parties owed $39,146.58 on the first mortgage, payable at a rate of $524.66 per month.

## II. Other Debts

In 2001, the parties took out a second mortgage loan in an effort to consolidate their then-existing debts. At the time of the hearing, the parties owed $53,873.85 on the second mortgage loan, payable at a rate of $675.54 per month.

In addition to the first and second mortgage loans, each party owed debts in his or her own name. According to his financial declaration, Husband's non-mortgage debts totaled $14,794.25, for a monthly obligation of $998.07. One of Husband's debts, for $10,794.25 to CitiFinancial, included the cost of purchasing Wife's car. Wife's financial declaration reflected non-mortgage debts totaling $29,118, for a monthly obligation of $907.[1] Husband testified that, until he began receiving telephone calls from bill collectors, he was unaware of Wife's new debts. Wife confirmed that she had had the bills for these accounts sent to her sister's address.

## III. Other Assets

Both parties were employed. Husband reported gross monthly earnings averaging between $3,100 and $3,600 from his job as a truck driver. In addition, he received a monthly retirement payment of $401.68 from Campbell's Soup. Wife reported gross monthly earnings of $1,339 from her job as a sewing machine operator. She requested $1,000 per month in permanent alimony.

---

1. Wife did not specify a monthly payment for her Chase Visa account, the balance of which was $14,500. She testified she could not afford to make payments on that account.

While Husband had two retirement accounts, Wife had none. Husband testified the payments he received from his Campbell's Soup retirement account would continue until he reached age 65.[2] In addition, Husband expected to receive approximately $500 per month from his military retirement account, beginning at age 60.

Each party expressed a desire to keep his or her own vehicle: Husband had a 1987 Chevrolet pickup truck, and Wife had a 1999 Toyota Camry.[3] At the conclusion of the hearing, the parties stipulated an old motorcycle stored in the outbuilding was not marital property. The family court adjourned the hearing, noting it would hold open the record for the receipt of the point credit summary relating to Husband's military retirement account and the 2001 appraisal of the marital home.

## IV. Order

On April 18, 2008, the family court entered an order granting the parties a divorce, dividing the marital property and debt, and requiring Husband to pay Wife alimony. The family court found Husband's monthly income was $3,201.68, and Wife's was $1,339.00. With respect to marital property, the family court regarded all property as marital because neither party possessed "substantial" non-marital property. The family court assigned a present value of –$8,500 to the marital home.[4] The family court noted Wife had no vested retirement account, but Husband had two. Of Husband's two retirement accounts, the family court determined his military retirement account was divisible but his account from Campbell's Soup

2. At the time Husband filed this action, he was 57 years old and Wife was 48 years old.

3. The parties stipulated to a value of $1,885 for Husband's truck. Husband considered Wife's car to be in excellent condition and valued it at $5,100. Wife described it as being in good condition and valued the car at $4,590.

4. This number appears to reflect the family court's determination of the home's market value, minus the amounts owed on the first and second mortgages that encumbered the home. Adding the mortgage balances and reducing the total by $8,500 indicates the family court set the marital home's market value at $84,520.43, which falls within the range established by the parties' valuations of the home.

was not. The family court did not specify a value for any other marital property.

The family court also found each party maintained marital debt in his or her own name. Husband's assets and debts, which included the marital home, totaled –$31,051.68. Wife's assets and debts totaled –$20,488.00. With regard to the 2001 second mortgage loan of $57,400, the family court found $42,770 of the proceeds from that loan paid Husband's debts [5] and $9,182 paid Wife's debts.

Based upon these facts, the family court awarded Wife her automobile, the personal property already in her possession, any items of personal property remaining in the marital home, and $132 per month of Husband's military retirement account.[6] Husband received the marital home, his pickup truck, any items of personal property remaining in the storage building, his Campbell's Soup retirement account, and the remainder of his military retirement account. The family court held each party individually "responsible for the debts in his or her individual name" and for his or her own attorney's fees and costs.

The family court required Husband to pay Wife a lump sum of $20,000 because he "received Thirty–Three Thousand Five Hundred Eighty–Eight and 00/100 ($33,588.00) in greater benefit" from the 2001 second mortgage than Wife. Furthermore, in view of Husband's receipt of the marital home and his undivided Campbell's Soup retirement account, the family court ordered him to pay Wife $500 per month in permanent periodic alimony.

---

5. Although Husband expressed concern about Wife's spending habits, his testimony demonstrated he, too, suffered from poor judgment in financial matters. For example, he took out a loan of $12,957 to provide a car for his son from a prior marriage. After the son failed to make payments for the car, Husband repossessed it and resold it at a loss for either $4,000 or $400. Part of the proceeds from the 2001 second mortgage loan paid off the car loan.

6. In the absence of actuarial evidence, the family court determined Wife's distribution from each payment rather than setting a present value for the divisible account. *See Smith v. Smith*, 308 S.C. 372, 375, 418 S.E.2d 314, 316 (Ct.App.1991) (recognizing "two common methods of valuing pensions ...: (1) present cash value, and (2) distribution from each payment").

Husband filed a motion for reconsideration, contending the evidence did not support the family court's allocation of proceeds from the 2001 second mortgage loan, award to Wife of a $20,000 lump sum, and award to Wife of $500 per month in alimony. The family court denied Husband's motion. This appeal followed.

## STANDARD OF REVIEW

"In appeals from the family court, [appellate courts] review[ ] factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "[W]hile retaining the authority to make our own findings of fact, we recognize the superior position of the family court judge in making credibility determinations." *Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011). The burden is upon the appellant to convince the appellate court that the preponderance of the evidence is against the family court's findings. *Id.* "Stated differently, de novo review neither relieves an appellant of demonstrating error nor requires us to ignore the findings of the family court." *Id.* at 388–89, 709 S.E.2d at 654.

## LAW/ANALYSIS

### I. Equitable Division

Husband argues the family court failed to follow the proper steps for equitable distribution and erred in ordering him to pay Wife $20,000 toward equitable division. We agree [7] and modify the family court's order to strike the $20,000 lump sum.

This court recently held:

---

7. Wife did not appeal the division of the marital estate. At oral argument, Husband conceded he was satisfied with the overall division and, with regard to the issue of equitable division, sought only to have the $20,000 lump sum stricken. Therefore, we address the family court's equitable division of the marital estate only to the extent the lump sum affects the fairness of the overall award. *See Barrow v. Barrow*, 394 S.C. 603, 610 n. 3, 716 S.E.2d 302, 306 n. 3 (Ct.App.2011) (excluding matters conceded at oral argument from discussion of issue on appeal).

The doctrine of equitable distribution is based on a recognition that marriage is, among other things, an economic partnership. The ultimate goal of apportionment is to divide the marital estate, as a whole, in a manner that fairly reflects each spouse's contribution to the economic partnership and also the effect on each of the parties of ending that partnership.

... For purposes of equitable distribution, "marital debt" is debt incurred for the joint benefit of the parties regardless of whether the parties are legally jointly liable for the debt or whether one party is legally individually liable. The same rules of fairness and equity that apply to the equitable distribution of marital property also apply to the equitable division of marital debts.

*King v. King*, 384 S.C. 134, 143, 681 S.E.2d 609, 614 (Ct.App. 2009) (internal citations and quotation marks omitted).

In the case at bar, the family court was tasked with equitably dividing an estate comprised primarily of unpaid debt. The marital home, which is often the most valuable asset in a long-term marriage, was so encumbered by mortgages that it had a negative value. The record reflects that the most substantial positively valued assets in the marital estate were the parties' vehicles: Husband's truck, valued at $1,885, and Wife's car, valued at either $4,590 or $5,100.[8] Nonetheless, even Wife's car was hardly owned outright: the parties purchased it using funds from a loan the family court ordered Husband to repay in full. As a result, we find that, following the equitable distribution of the marital estate, Husband lacked the means to pay a $20,000 lump sum.

In addition, the family court carefully parsed and divided between the parties the proceeds from the 2001 second mortgage loan. Though its reasoning is unclear from the record, the family court appears to have based its award of a $20,000 lump sum to Wife on the benefits the parties purportedly received from the proceeds of this loan. For the purposes of this appeal and in view of Husband's concession at oral

---

8. The family court awarded the personal property from the home to Wife and from the storage building to Husband but made no findings as to the value of either award. Only Husband listed the aggregate value of the parties' personal property on his financial declaration. He valued it at $3,000.

argument, we set aside our concerns about dividing up as non-marital property the proceeds of a seven-year-old mortgage loan that was secured by, and was used at least in part to improve, the marital home. Regardless of who received which benefits or whether the benefits conferred were personal or marital, Husband is obligated to repay the full amount of the 2001 second mortgage loan.

We find it sufficient to note that, to the extent the proceeds at issue represented a marital asset, by the time the family court ruled, it was a phantom asset. The outstanding balance of the loan exceeded the parties' equity in the property used to secure it. Accordingly, Husband could not have satisfied the 2001 second mortgage loan even by liquidating the property. Under the particular circumstances present in this case, we find it inequitable to burden him with an additional payment to Wife of $20,000.

After a thorough review of the record on appeal and the family court's order, we are unable to find any evidence supporting the award of a $20,000 lump sum to Wife. Furthermore, no evidence indicates Husband either possessed or received through equitable distribution any assets that would enable him to amass $20,000. Accordingly, we affirm the family court's division of marital property but modify its order to strike the lump sum.

## II. Alimony

Husband argues the family court erred in ordering him to pay Wife $500 per month in permanent periodic alimony. We disagree.

Alimony functions as a substitute for the support normally incident to the marital relationship and should put the supported spouse in the same position, or as near as is practicable to the same position, enjoyed during the marriage. *Allen v. Allen,* 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct.App. 2001). After finding an award of alimony is warranted, the family court must ensure its award is "fit, equitable, and just." *Id.* The family court "may grant alimony in such amounts and for such term as [it] considers appropriate under the circumstances." *Davis v. Davis,* 372 S.C. 64, 79, 641 S.E.2d 446, 454

(Ct.App.2006). A family court considering an award of alimony:

[M]ust consider and give weight in such proportion as it finds appropriate to all of the following factors:

(1) the duration of the marriage[,] together with the ages of the parties at the time of the marriage and at the time of the divorce or separate maintenance action between the parties;

(2) the physical and emotional condition of each spouse;

(3) the educational background of each spouse, together with need of each spouse for additional training or education in order to achieve that spouse's income potential;

(4) the employment history and earning potential of each spouse;

(5) the standard of living established during the marriage;

(6) the current and reasonably anticipated earnings of both spouses;

(7) the current and reasonably anticipated expenses and needs of both spouses;

(8) the marital and nonmarital properties of the parties, including those apportioned to him or her in the divorce or separate maintenance action;

(9) custody of the children ...;

(10) marital misconduct or fault of either or both parties ...;

(11) the tax consequences to each party as a result of the particular form of support awarded;

(12) the existence and extent of any support obligation from a prior marriage or for any other reason of either party; and

(13) such other factors the court considers relevant.

S.C.Code Ann. § 20–3–130(C) (Supp.2011).

■ We affirm the award of alimony. The family court considered and adequately addressed each of the statutory factors in making its award, and the preponderance of the evidence supports its decision. Although section 20–3–130(C) requires the family court to consider and give appropriate weight to each of the thirteen factors, it does not require a full

explanation of the weight accorded to each factor. Nonetheless, the family court made clear which factors carried the greatest weight in this case.

■ The family court recited all thirteen statutory factors and made at least one finding of fact concerning each factor. In particular, the family court recognized although Wife would need additional training to achieve a greater income, she had "most likely reached her income potential." The family court also noted Wife's historical dependence on Husband's income for her standard of living. In addition, the family court stated it considered Husband's greater income, which was augmented by his undivided Campbell's Soup retirement account. We find the standard of living established during this lengthy marriage, the disparity in the parties' incomes and earning abilities, and Wife's dependence upon Husband's income support an award of alimony.

■ Moreover, the preponderance of the evidence supports the amount of alimony awarded. *See Allen*, 347 S.C. at 184, 554 S.E.2d at 424 (requiring an award of alimony to be "fit, equitable, and just"). The family court recorded Husband's "current income total[ed]" $3,201.68 per month. Although the family court did not indicate whether this amount included the monthly disbursement of $401.68 from Husband's retirement account, we note the family court specifically identified the retirement income as a factor in its alimony analysis.[9] The family court further recorded Wife's current income was $1,339.00 per month. An award of $500 per month in alimony to Wife effectively reduced Husband's gross income to $2,701.68 per month and raised Wife's to $1,839 per month.

The family court's award leaves both parties suffering from similar monthly deficits. Husband identified monthly expenses of $3,340.59, including $100 for room rent while living with his parents and $1,200.20 for payments on the first and second mortgages. As a result, he has a monthly deficit of $638.91 before taxes, which is reducible to a deficit of $538.91

---

9. According to his financial declaration and testimony, Husband earned an average of $3,100 to $3,600 per month as a truck driver. Nonetheless, the family court found Husband's total monthly income was $3,201.68. If this total includes the $401.68 retirement benefit, Husband earned only $2,800. However, neither party contests this finding.

12

upon his return to the marital home. If Husband's future earnings exceed $2,800 per month, he could further reduce his deficit. Wife identified monthly expenses of $2,668.84, including $1,240.84 for housing based upon the first and second mortgage payments on the marital home. The record does not reflect how much Wife might pay for other housing. Using these numbers, Wife has a monthly deficit of $829.84 before taxes. However, she could reduce that deficit by minimizing the amount she spends on housing.

The alimony award leaves Husband with a greater gross monthly income than Wife. However, after paying the monthly bills reflected in the parties' financial declarations, both parties experience similar deficits. Neither experiences a windfall. Accordingly, the award is equitable, and the preponderance of the evidence supports the family court's decision.

## CONCLUSION

We find the evidence in the record does not support the family court's award to Wife of a $20,000 lump sum. Therefore, we affirm the family court's distribution of the marital estate but strike the $20,000 lump sum.

In addition, we find the preponderance of the evidence supports the family court's award of permanent periodic alimony to Wife. Accordingly, we affirm that decision.

**AFFIRMED AS MODIFIED.**

FEW, C.J., HUFF, J., and CURETON, A.J., concur.