776 S.E.2d 392

**Yancey ROOF, Appellant,**

v.

**Kenneth A. STEELE, Respondent.**

**Appellate Case No. 2013–002326.**
**No. 5333.**

Court of Appeals of South Carolina.

Heard June 3, 2015.
Decided July 22, 2015.
Rehearing Denied Sept. 17, 2015.

544

Jean Perrin Derrick, of Lexington, for appellant.

Max Nathan Pickelsimer, of Warner Payne & Black, LLP, of Columbia, for respondent.

KONDUROS, J.

Yancey Roof (Wife) appeals the family court's alimony award, contending it erred in reducing her previously modified award and in requiring her to pay back, via offset of her attorney's fees award, the overpayment of alimony she received during the pendency of this case on remand. We affirm as modified.

## FACTS/PROCEDURAL BACKGROUND

Wife and Kenneth Steele (Husband) married in 1993. Wife was diagnosed with multiple sclerosis (MS) in 2000, and the parties separated in 2004 resulting in a 2006 divorce. During the marriage, Wife worked as an employee at a frame shop that she and Husband eventually purchased with a partner.

Husband worked for Blue Cross and Blue Shield and at the time of the divorce, earned approximately $60,000 per year. Wife worked in the frame shop and was earning $16,800 annually. The parties agreed Husband would pay Wife $300 per month in alimony and maintain health insurance on her through his employer at a cost of $87 per month. Wife also received child support for the parties' two children. After two years, Husband's employer stopped permitting ex-spouses to be covered on its health insurance plan. Wife petitioned the family court for a modification in her alimony based on the change in circumstances, primarily her lack of insurance coverage, and the expense for getting coverage while suffering from MS. Other changes in circumstances included a decrease in Wife's earnings, an increase in Husband's earnings, and the discontinuation of $200 per month in child support based on the children's majority.

The family court increased Wife's alimony to $1,547.65. The family court tied the award to the cost of Wife's insurance coverage. Husband appealed, and this court reversed and remanded, indicating although the change in circumstances warranted an increase in Wife's alimony, the agreement between the parties did not mandate that alimony be tied directly to the cost of health insurance. *See Roof v. Steele,* 396 S.C. 373, 389, 720 S.E.2d 910, 919 (2011).

On remand, Wife testified her most recent annual earnings at the frame shop were $12,000 and the partner with whom she operated the frame shop had retired. The frame shop operated approximately thirty-eight hours per week, and Wife stated she had to stay longer sometimes to complete her work. She indicated her health is "OK" and she does not like to think of herself as disabled. However, she also described her current physical and emotional condition as "a wreck" and admitted working is "challenging." She further testified she suffers from "optic neuritis a lot in [her] eyes, extreme fatigue, and massive headaches." She provided she had lost a lot of sensation on the right side of her body and indicated it "doesn't function very well." This lessening in function affected her ability to do some of the fine manual framing work as quickly. Additionally, her condition made her depressed. She testified she did not believe she could keep a job other than running the frame shop because she needs to be able to

work at her own pace and thus, she has not sought other employment. Wife stated she has gone to the Social Security website using her smartphone and completed a preliminary screening, which indicated she was not eligible. Wife testified she had not pursued disability or Medicaid further because she believed she should work and was unaware one could earn a certain amount of income and still qualify for benefits.

With regard to her insurance, Wife maintained her coverage through the Consolidated Omnibus Budget Reconciliation Act (COBRA) after Husband's employee insurance coverage ended, and she was able to obtain a private policy in the amount of $1,247.65 per month. Husband paid this premium pursuant to court directive. The cost of the policy increased by approximately $200 per month thereafter, and Wife dropped the insurance because she could not pay the premium. However, Wife still accepted the alimony payments from Husband and used them to pay other bills.

Wife indicated she was not living at the same standard as during the marriage when she took vacations with the family, spent time on the lake, purchased new clothing, and had health insurance. Additionally, Wife testified she had listed $3,600 as the annual alimony she received on two prior tax returns but acknowledged the money for her insurance premium should have been considered alimony as well. She further indicated those returns were prepared by her brother-in-law and Husband deducted the full amount paid on his tax returns.

Husband testified he suffers from diabetes and high blood pressure and had a heart attack requiring a stint in 2007. He is a network administrator with Blue Cross and Blue Shield and testified his earnings had increased from $5,000 per month during the marriage to approximately $6,755 per month plus an annual $7,600 incentive bonus. Husband also testified he had inherited approximately $300,000 to $350,000 since the divorce and had purchased some personal items, including a boat and a motorcycle, and had taken a few cruises and a trip to Mexico. He indicated he invested the remainder and purchased four rental properties that had yet to earn a profit. Additionally, he stated he pays for one child's college expenses and has paid the majority of the children's healthcare expenses.

Doris Ann Hozey, a self-employed insurance agent, testified the current cost to insure Wife would be $1,612.27 monthly. However, she anticipated once the Affordable Health Insurance Act enrollment began, Wife could be covered for approximately $640 to $720 per month.

The family court determined "[e]ven though her expenditures exceed her income, [Wife] has done nothing to improve her financial circumstances. Although she earns much less than minimum wage, she was [sic] not considered closing her business and/or seeking other employment." With regard to not maintaining her health insurance most recently, the court stated "[i]t appears that [Wife] is complacent in her predicament, and instead of taking responsibility to improve her own income to at least cover necessities, so that she could use the alimony to cover insurance, she has sought increased alimony from [Husband]." "[Wife] did nothing to mitigate her future healthcare costs. She did not explore other employment, employment that would increase her earnings and/or provide health care coverage. She did not seek to improve her education; she did not apply for Medicaid or Social Security Disability."

Ultimately, the family court found "[Wife]'s disability does not affect her ability to work; she is capable of working full-time," and "capable of earning at least minimum wage." The family court therefore imputed a gross annual income to Wife of $15,072.00. The family court modified Husband's alimony payment to $796.51 per month and required Wife to repay the overpayment of alimony, $15,022.80, received since the date of remand.

With regard to attorney's fees, the family court found Wife had been successful in increasing her alimony payment overall from $300 per month and Husband was better able to pay attorney's fees although "[h]ad [Wife] put forth as much effort to improve her financial situation and become self-sufficient as she did to increase her alimony payment, she may not have had as much debt as she does today, as she would not owe as much in attorney's fees." Nevertheless, the family court awarded Wife $25,000 of her $29,753.31 attorney's fees. The family court ordered the award offset the repayment of Hus-

band's alimony overpayment so Husband would actually pay $10,118.58 to Wife's attorney.[1]

## STANDARD OF REVIEW[2]

 The family court is a court of equity and on appeals therefrom the appellate court reviews factual and legal issues de novo. *Holmes v. Holmes*, 399 S.C. 499, 504, 732 S.E.2d 213, 216 (Ct.App.2012). However, this broad standard of review does not require the appellate court to disregard the factual findings of the family court, and the appellant is not relieved of the burden of demonstrating error in the family court's findings of fact. *Id.* "Accordingly, we will affirm the decision of the family court in an equity case unless its decision is controlled by some error of law or the appellant satisfies the burden of showing the preponderance of the evidence actually supports contrary factual findings by this court." *Id.*

## LAW/ANALYSIS

### I. Alimony Award

Wife alleges the family court erred in failing to award her a higher amount of alimony. We agree.

Section 20-3-170(A) (2014) of the South Carolina Code provides:

Whenever any husband or wife, pursuant to a judgment of divorce from the bonds of matrimony, has been required to

---

1. At the conclusion of a previous hearing, the family court had awarded Wife $10,000 in attorney's fees, which Husband deposited with the court until the ultimate conclusion of this matter.

2. Wife characterizes the standard of review as an abuse of discretion standard. However, since *Lewis v. Lewis*, 392 S.C. 381, 709 S.E.2d 650 (2011), this court has employed a de novo standard of review in alimony award and modification cases. *See Holmes v. Holmes*, 399 S.C. 499, 504, 732 S.E.2d 213, 216 (Ct.App.2012) (citing de novo standard of review in considering the husband's appeal in change of circumstances alimony case); *Way v. Way*, 398 S.C. 1, 7, 726 S.E.2d 215, 219 (Ct.App.2012) (citing de novo standard of review in the husband's appeal from permanent, periodic alimony award and equitable distribution to the wife); *McKinney v. Pedery*, 406 S.C. 1, 6, 749 S.E.2d 119, 122 (Ct.App.2013) (citing de novo standard of review in the husband's appeal from the termination of the wife's alimony obligation), *cert. granted* (Aug. 6, 2014).

make his or her spouse any periodic payments of alimony and the circumstances of the parties or the financial ability of the spouse making the periodic payments shall have changed since the rendition of such judgment, either party may apply to the court which rendered the judgment for an order and judgment decreasing or increasing the amount of such alimony payments or terminating such payments and the court, after giving both parties an opportunity to be heard and to introduce evidence relevant to the issue, shall make such order and judgment as justice and equity shall require, with due regard to the changed circumstances and the financial ability of the supporting spouse, decreasing or increasing or confirming the amount of alimony provided for in such original judgment or terminating such payments.

■ "Many of the same considerations relevant to the initial setting of an alimony award may be applied in the modification context as well, including the parties' standard of living during the marriage, each party's earning capacity, and the supporting spouse's ability to continue to support the other spouse." *Holmes,* 399 S.C. at 505, 732 S.E.2d at 216–17 (internal quotation marks omitted). Per statute, the complete list of factors the family court can consider in setting alimony includes (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses and needs of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; (12) prior support obligations; and (13) other factors the court considers relevant. S.C.Code Ann. § 20–3–130(C) (2014).

■■ "Whether termed voluntary underemployment, imputation of income, or the failure to reach earning potential, the case law is clear that when a payor spouse seeks to reduce support obligations based on his diminished income, a court should consider the payor spouse's earning capacity." *Hawkins v. Hawkins,* 403 S.C. 228, 242, 742 S.E.2d 677, 684 (Ct.App.2013) (internal quotation marks omitted). "Likewise,

it is proper to consider a supported spouse's earning capacity and impute income to a spouse who is underemployed or unemployed." *Id.* (internal quotation marks omitted). "However, courts are reluctant to invade a party's freedom to pursue the employment path of their own choosing or impose unreasonable demands upon parties." *Id.* (internal quotation marks omitted).

■ In this case, the preponderance of the evidence does not establish Wife is capable of working a full-time job for another employer for forty hours per week. While Wife asserts her health is "OK" and she is able to work in the frame shop, the greater weight of the evidence suggests she would not be able to work a full-time job elsewhere. Wife's desire to participate in the workforce in a way that was manageable with her MS simply does not compel that conclusion. The record shows Wife suffers myriad symptoms from MS and her work history consists of training horses and working in this frame shop. She has a high school diploma and no computer skills. No evidence was presented regarding prevailing job opportunities or earning levels in the community for an employee with Wife's skill set or for an employee with MS or other chronic illness. Requiring Wife to attempt working full-time in another, less flexible environment is an unreasonable demand based on Wife's long list of undisputed ailments and work history.

Other allegations of error include the finding Wife did not attempt to mitigate her healthcare expenses by pursuing Medicaid or Social Security benefits. The record shows Wife did some tentative inquiry into those programs that left her believing she would not qualify, particularly if she continued earning income on her own. The family court's order is unclear regarding how its finding on this issue affected the alimony award, but the record does not support the characterization of Wife's failure as willful complacency.

■ In examining the list of relevant factors, all militate toward a higher alimony award to Wife. The marriage was of a relatively lengthy duration during which the parties enjoyed a comfortable lifestyle Wife no longer enjoys. Husband has more education, a more lucrative employment history, and higher anticipated earnings, and although his health is not

perfect, no testimony was presented it interferes with his ability to work. Additionally, Wife's expenses are not unreasonable or out of line with the lifestyle the parties enjoyed during the marriage, and her physical and emotional health is not as good as Husband's. The parties have no other support obligations and have never alleged misconduct in the breakup of their marriage.

Based on our review of the record presented and consideration of the requisite factors, we find a monthly alimony award of $1,550 to be appropriate. This award is taxable to Wife and deductible to Husband and is retroactive to the date of Judge Hurley's final order.

## II. Overpayment of Alimony

Wife appeals the portion of the family court's order requiring her to repay the excess alimony paid by Husband via offset of her attorney's fee award. Based on our increase in Wife's alimony award, we need not address this point as our ruling results in there having been no overpayment to Wife. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not address an appellant's remaining issues when its determination of a prior issue is dispositive). We take this opportunity to clarify that Husband is to pay Wife's attorney fees in the amount of $25,000 as awarded by the family court. The $10,000 held by the clerk of court shall be disbursed immediately, and Husband shall make monthly payments to Wife's attorney in the amount of $500 per month on the fifteenth day of each month until the remaining balance of $15,000 is paid in full.

Based on all of the foregoing, the order of the family court is

**AFFIRMED AS MODIFIED.**

THOMAS and GEATHERS, JJ., concur.