697 S.E.2d 715

**Jack David BENNETT, Respondent,**

v.

**Lori G. RECTOR f/k/a Lori G. Bennett, Appellant.**

No. 4722.

Court of Appeals of South Carolina.

Heard Feb. 2, 2010.

Decided Aug. 4, 2010.

276

Mark A. Mason, of Mount Pleasant, for Appellant.

J. Michael DeTreville and Patricia O. DeTreville, both of Charleston, for Respondent.

KONDUROS, J.

Lori G. Rector (Mother) appeals from the family court's order awarding Jack David Bennett (Father) child support. Mother contends the family court erred in (1) determining the amount of child support under the Child Support Guidelines (the Guidelines); (2) making the award retroactive; and (3) awarding Father attorney's fees. We affirm.

## FACTS/PROCEDURAL HISTORY

Father and Mother married in 1989 and had a daughter (Daughter) in 1990. In 1993, the parties entered into a separation agreement under which Mother received sole custody of Daughter and Father paid $500 a month in child support. The parties divorced in 1994. In 1996, Mother married John Rector, an IBM executive. On December 12, 2005, when Daughter was fifteen years old, she had a child (Grandchild). Father filed a petition for ex parte relief against Mother on February 27, 2006, seeking an emergency order awarding him temporary custody of Daughter. He alleged Daughter, Grandchild, and Mother were living with an unrelated male who was not Mother's husband; Mother abused alcohol and drugs; and Mother had been restrained by a magistrate for her behavior towards Father, including harassing phone calls. Father also filed a motion for temporary relief, requesting custody, child support, and attorney's fees. Additionally, Father filed a complaint asking for temporary

and permanent custody of Daughter. Father further request-ed Mother pay temporary and permanent child support and attorney's fees.

On February 28, 2006, the family court entered a temporary order granting Father custody of Daughter, pending a hearing on the motion for temporary relief.[1] On March 6, 2006, the parties entered into an agreement that Father would have temporary custody and Mother would pay child support pursu-ant to the Guidelines and $1,500 towards Father's temporary attorney's fees. An attached worksheet determined Mother's temporary child support obligation under the Guidelines, based upon gross monthly income of $2,298 and set the amount at $324 per month. On March 29, 2006, the family court approved and adopted the temporary agreement.

On December 6, 2006, Mother filed an answer to Father's complaint, relinquishing custody of Daughter if Daughter wished to reside with Father. She further stated she should pay child support under the Guidelines if she is not the custodial parent.

Beginning on June 5, 2007, the family court conducted a final hearing to determine child support and whether to award attorney's fees. Mother submitted a financial declaration listing her monthly income at $1,967 and monthly expenses amounting to $7,357, including $1,350 for the lease for her car. Mother testified she began working as a real estate agent in 2005. She stated she applied for a car loan on June 23, 2006, and provided her income as $141,000 a year but contended that was projected income.[2] Mother testified she was up-to-date on her lease payments. She also testified that in Decem-ber of 2005, she purchased a house for $795,000 using $450,000 she had acquired from other property. She stated she had completed an application for a $200,000 line of equity against her home that listed her gross monthly income as $21,000. She explained she had based her income on that application on a real estate commission she was expecting to receive but it

---

1. Custody of Grandchild was an issue before the family court but is not an issue on appeal.

2. The loan application actually lists her yearly income at $149,000, with $100,000 as her gross annual income and an additional $49,000 in rental income.

was still pending and had not yet closed. Mother also testified she and Rector are separated but they did not have a separation agreement and he does not pay her any spousal support.[3] She stated that during their marriage, she and Rector had invested in real estate and bought several properties as investments and that was her retirement plan.

Mother introduced an expert qualified in domestic financial matters, Cindy MacCully, who assisted her in drafting her financial declaration for the court. MacCully testified she did not impute any income to Mother in preparing the financial declaration because Mother's properties were not idle land or vacation homes that were not rented. She further testified Mother was using gifts and loans from her mother and equity lines to pay expenses, which MacCully did not consider income. She also stated she did not include money Mother obtained from refinancing in her income.

Following the hearing, the family court issued a final order finding the majority of Mother's testimony "absolutely lacking in credibility." The court further found Mother

voluntarily absented herself from the courtroom for approximately three-quarters ... of the hearing. This [c]ourt has not previously encountered a situation where a party voluntarily absented himself or herself from the courtroom during the proceeding, although such occurrence might be expected or encountered in default proceedings or where a party was unavailable by reason of distance or illness, etc. This case presented the first time that this [c]ourt has ever had a party who was available but who voluntarily absented herself from the courtroom during most of the proceedings. This election on the part of [Mother] denied the [c]ourt the opportunity to observe her demeanor during this trial, other than during the period in which she was testifying. During her period of testimony, however, this [c]ourt finds her demeanor indicated a lack of credibility.

The family court found based upon the lifestyle Mother enjoys, setting child support based only upon $2,000 a month would be inequitable, particularly because it would deprive Daughter from benefitting from the style of life that Mother

---

3. Mother and Rector's 2005 joint income tax return lists $193,472 as "wages, salaries, tips, etc."

enjoys. The court stated: "This is a situation where it is proper to impute income to [Mother] based upon her own testimony that she has the ability to earn and that she believes that she will earn between $149,000 and $252,000 per year." The court used the lower of the two figures and imputed to Mother $12,416.66 per month in gross income for purposes of determining the amount of child support. The family court ordered Mother to pay child support of $1,138 per month, retroactive to March 6, 2006.

Additionally, the family court found Mother's failure to file responsive pleadings in a timely manner and be truthful and honest about her ability to earn income prolonged the matter. It also found the matter was difficult for Father to prosecute because whether custody was being contested was unknown and a great deal of discovery had to be conducted to determine Mother's ability to earn an income. Further, the court found the "litigation was complicated and prolonged by [Mother's] failure to accept reality and by her failure to be credible and forthcoming in her dealings when trying to resolve these issues." The family court determined the time spent was necessary; Father's attorney charged customary fees, was regularly before the family court, and was in good standing; Mother had the ability to pay her own fees as well as part of Father's based on her lavish lifestyle and the $400,000 in equity she has in her home, whereas Father had taken out a loan and reduced his lifestyle to pay for his attorney; and Father had received beneficial results. The family court ordered Mother to pay $25,000 in attorney's fees to Father. This appeal followed.

## STANDARD OF REVIEW

"On appeal from a family court order, this [c]ourt has authority to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence." *E.D.M. v. T.A.M.*, 307 S.C. 471, 473, 415 S.E.2d 812, 814 (1992). "Because the family court is in a superior position to judge the witnesses' demeanor and veracity, its findings should be given broad discretion." *Scott v. Scott*, 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003). When the evidence is disputed, the appellate court may adhere to the family

court's findings. *Woodall v. Woodall*, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996).

## LAW/ANALYSIS

### I. Child Support

■ Mother argues the family court erred in determining the amount of child support Father would receive under the Guidelines by improperly determining her gross monthly income. Specifically, she contends the family court could not use potential income because it made no finding she was unemployed or underemployed. Further, Mother maintains the family court improperly deviated from the Guidelines. We disagree.

■ "A child support award rests in the discretion of the trial judge, and will not be altered on appeal absent abuse of discretion." *Floyd v. Morgan*, 383 S.C. 469, 475, 681 S.E.2d 570, 573 (2009). An abuse of discretion occurs when the decision is controlled by an error of law or is based on factual findings lacking evidentiary support. *Degenhart v. Burriss*, 360 S.C. 497, 500, 602 S.E.2d 96, 97 (Ct.App.2004). Generally, the family court is required to follow the Guidelines in determining the amount of child support. *Sexton v. Sexton*, 321 S.C. 487, 490, 469 S.E.2d 608, 610 (Ct.App.1996). Although the Guidelines govern all actions involving child support, the family court retains discretion when making the final award. *Woodall v. Woodall*, 322 S.C. 7, 13, 471 S.E.2d 154, 158 (1996).

> In any proceeding for the award of child support, there is a rebuttable presumption that the amount of the award which would result from the application of the [G]uidelines ... is the correct amount of child support to be awarded. A different amount may be awarded upon a showing that application of the [G]uidelines in a particular case would be unjust or inappropriate. When the court orders a child support award that varies significantly from the amount resulting from the application of the [G]uidelines, the court shall make specific, written findings of those facts upon which it bases its conclusion supporting that award.

S.C.Code Ann. § 63–17–470(A) (2010). "Deviation from the [G]uidelines should be the exception rather than the rule.

When the court deviates, it must make written findings that clearly state the nature and extent of the variation from the [G]uidelines." S.C.Code Ann. Regs. 114–4710(B) (Supp.2009).

■ "The [G]uidelines define income as the actual gross income of the parent, if employed to full capacity, or potential income if unemployed or underemployed." S.C.Code Ann. Regs. 114–4720(A)(1) (Supp.2009). "Gross income includes income from any source including salaries, wages, commissions, royalties, bonuses, rents (less allowable business expenses), dividends, severance pay, pensions, interest, trust income, annuities, capital gains, . . . and alimony, including alimony received as a result of another marriage. . . ." S.C.Code Ann. Regs. 114–4720(A)(2) (Supp.2009). Child support payments do not have to be made solely from current earnings. *Sutton v. Sutton,* 291 S.C. 401, 406, 353 S.E.2d 884, 887 (Ct.App.1987). "The assets of a person having the duty to support a child may be considered in determining the amount of child support." *Id.* "The court may also take into account assets available to generate income for child support." S.C.Code Ann. Regs. 114–4720(A)(2)(A). "In addition to determining potential earnings, the court should impute income to any non-income producing assets of either parent, if significant, other than a primary residence or personal property. Examples of such assets are vacation homes (if not maintained as rental property) and idle land." S.C.Code Ann. Regs. 114–4720(A)(2)(B). "Ordinarily, the court will determine income from verified financial declarations required by the Family Court rules. However, . . . where the amounts reflected on the financial declaration may be an issue, the court may rely on suitable documentation of current earnings. . . ." S.C.Code Ann. Regs. 114–4720(A)(6) (Supp.2009).

■ "If the court finds that a parent is voluntarily unemployed or underemployed, it should calculate child support based on a determination of potential income which would otherwise ordinarily be available to the parent." S.C.Code Ann. Regs. 114–4720(A)(5) (Supp.2009). "In order to impute income to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earnings level of the parent based on that parent's recent work history, occupational qualifications, and prevailing job opportunities and earning levels in the community." S.C.Code Ann. Regs. 114–4720(A)(5)(B). A bad faith motivation is not

required for a finding of voluntary underemployment. *Arnal v. Arnal*, 371 S.C. 10, 13, 636 S.E.2d 864, 866 (2006). "However, the motivation behind any purported reduction in income or earning capacity should be considered in determining whether a parent is voluntarily underemployed." *Spreeuw v. Barker*, 385 S.C. 45, 62, 682 S.E.2d 843, 851 (Ct.App.2009). When actual income versus earning capacity is at issue, courts should closely examine a good-faith and reasonable explanation for the decreased income. *Id.*

Although the family court did make some reference to deviation from the Guidelines, that is not what it did.[4] Instead, it found Mother's gross income to be greater than she claimed. Mother obviously had access to a large amount of money judging from her monthly expenses, expensive properties, and shopping habits. Mother listed her monthly income at the amount the family court found it to be and higher on documents she filled out during the pendency of this case. She has $30,000 in a savings account that she claims she inherited and also owns several expensive properties. The family court is allowed to take this into account when determining the amount of child support. Allowing Mother to receive the benefit of such an extravagant lifestyle while only paying child support based on income of $23,000 a year would be inequitable.

We leave matters of credibility to the family court, and the record supports the family court's finding Mother uncredible. Although the family court found Mother's expert credible, it recognized she completed the financial declaration based on Mother's uncredible information. The family court did not abuse its discretion in determining the amount of child support. Accordingly, we affirm the family court's award of $1,138 per month in child support.

## II. Retroactive Child Support

▮ Mother argues the family court erred in applying the higher amount of child support retroactively because the

4. The family court specifically stated: "I'm not deviating from the [G]uidelines.... I was making my ruling based upon imputed income, and that is not a deviation from the [G]uidelines. That, instead, is a finding of imputed income. In using that amount, there is no deviation from the [G]uidelines."

parties stipulated to the temporary amount and did not stipulate that it would be reviewed. Further, she argues Father did not plead or argue at the final hearing for an increase to be applied retroactively. We find this issue unpreserved for our review.

"When a party receives an order that grants certain relief not previously contemplated or presented to the trial court, the aggrieved party must move, pursuant to Rule 59(e), SCRCP, to alter or amend the judgment in order to preserve the issue for appeal." *In re Timmerman*, 331 S.C. 455, 460, 502 S.E.2d 920, 922 (Ct.App.1998). Mother contends that Father never requested the award to be retroactive. Accordingly, when the family court made the award retroactive in its order, Mother needed to raise the issue in a Rule 59(e) motion. Because she did not, this issue is not preserved for appellate review.

### III. Attorney's Fees

Mother maintains the family court erred in awarding Father attorney's fees because she did not prolong the case and the case was largely uncontested. We disagree.

The family court has discretion in deciding whether to award attorney's fees, and its decision will not be overturned absent an abuse of discretion. *Donahue v. Donahue*, 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989). An abuse of discretion occurs when the decision is controlled by an error of law or is based on factual findings lacking evidentiary support. *Degenhart*, 360 S.C. at 500, 602 S.E.2d at 97. In deciding whether to award attorney's fees, the family court should consider (1) each party's ability to pay his or her own fees; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the fees on each party's standard of living. *Patel v. Patel*, 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004). In determining reasonable attorney's fees, the six factors the family court should consider are "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal

fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

This court has previously held when parties fail to cooperate and their behavior prolongs proceedings, this is a basis for holding them responsible for attorney's fees. *Anderson v. Tolbert*, 322 S.C. 543, 549–50, 473 S.E.2d 456, 459 (Ct.App. 1996); *see also Donahue*, 299 S.C. at 365, 384 S.E.2d at 748 (holding husband's "lack of cooperation ... serves as an additional basis for the award of attorney's fees"); *Johnson v. Johnson*, 296 S.C. 289, 304, 372 S.E.2d 107, 115 (Ct.App.1988) (citing husband's lack of cooperation in discovery as basis for increasing wife's attorney fees award on appeal). "An adversary spouse should not be rewarded for such conduct." *Anderson*, 322 S.C. at 549, 473 S.E.2d at 459.

We find the family court did not abuse its discretion in awarding attorney's fees or in determining the amount of attorney's fees. It considered all of the appropriate factors and stated why those factors supported awarding Father attorney's fees. The record contains evidence to support each of the family court's findings. Father prevailed on all issues, and Mother has the ability to pay the fees. Further, Mother's dishonesty about her income was the main source of contention. Additionally, her failure to respond to pleadings prolonged the matter. Because the evidence in the record supports the family court's findings as to attorney's fees, it did not abuse its discretion in awarding attorney's fees and calculating the amount.[5]

## CONCLUSION

The family court did not abuse its discretion in determining the amount of child support or awarding Father attorney's fees. Additionally, Mother's argument that the family court erred in applying the child support award retroactively is

---

5. Mother further contends a portion of Father's attorney's fees were due to third parties. However, Mother never argued this to the family court. Accordingly, this issue is not preserved for our review. *See Doe v. Doe*, 370 S.C. 206, 212, 634 S.E.2d 51, 55 (Ct.App.2006) ("[W]hen an appellant neither raises an issue at trial nor through a Rule 59(e), SCRCP, motion, the issue is not preserved for appellate review.").

unpreserved for our review. Accordingly, the family court's order is

**AFFIRMED.**

HUFF and THOMAS, JJ., concur.