**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Alicia M. Rudick, Appellant,

v.

Brian R. Rudick, Respondent.

Appellate Case No. 2016-002169

Appeal From Darlington County
Cely Anne Brigman, Family Court Judge

Unpublished Opinion No. 2019-UP-306
Heard June 6, 2019 – Filed August 21, 2019
Withdrawn, Substituted and Refiled December 18, 2019

**AFFIRMED IN PART AND REVERSED IN PART**

Karl Huggins Smith, of Smith Watts & Associates, LLC, of Hartsville, and Gregory Samuel Forman, of Gregory S. Forman, PC, of Charleston, for Appellant.

Kevin Mitchell Barth, of Barth, Ballenger & Lewis, LLP, of Florence, and Marian Dawn Nettles, of Nettles Turbeville & Reddeck, of Lake City, for Respondent.

**LOCKEMY, C.J.:** Alicia M. Rudick (Wife) appeals a family court order claiming the family court improperly valued several marital assets and therefore, the equitable distribution award to Brian R. Rudick (Husband) is incorrect. In addition, Wife argues the family court erred in awarding Husband $3,000 per month in permanent periodic alimony and this court should reverse the award of attorney's fees to Husband. We affirm in part and reverse in part.

## FACTS

Husband and Wife married in 1999 and have three minor children together. Throughout the marriage, Wife was employed by Sonoco Products and Husband was employed as a law enforcement officer. Wife's income drastically increased during the marriage, while Husband's income remained essentially the same.

The parties separated on April 6, 2015, and Wife filed for divorce on July 12, 2015. A temporary hearing was held on July 13, 2015, and the family court issued a Temporary Consent Order filed on October 19, 2015. The parties participated in a two-day trial on June 2, 2016, and June 20, 2016, which culminated in a Final Order granting the divorce based on one year's continuous separation. The family court awarded Husband $3,000 per month in permanent periodic alimony and divided the marital estate, awarding Wife sixty percent and Husband the remaining forty percent. As such, the family court ordered Wife to pay $206,703 of her Sonoco 401(K) plan to Husband by way of a qualified domestic relations order (QDRO). In addition, the family court ordered Wife to contribute $5,000 toward Husband's attorney's fees and costs.

Wife filed a motion to reconsider on August 10, 2016. The family court denied Wife's motion in an order filed September 23, 2016. This appeal followed.

## STANDARD OF REVIEW

"[T]he proper standard of review in family court matters is de novo." *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018). "[D]e novo review allows an appellate court to make its own findings of fact[.]" *Id.* at 593, 595, 813 S.E.2d at 487.

## LAW/ANALYSIS

### A. Asset Valuation

On appeal, Wife argues the family court erred in determining the value of several marital assets, including her Sonoco stock options, Husband's and Wife's vehicles,

the Disney Timeshare, and Husband's and Wife's defined benefit pension plans. As we explained in *Browder v. Browder*, 382 S.C. 512, 522-23, 675 S.E.2d 820, 825 (Ct. App. 2009),

> Generally, marital property subject to distribution is valued as of the date the marital litigation is filed or commenced. The court has broad discretion in valuing marital property. As such, the court may accept the valuation of one party over another, and the court's valuation of marital property will be affirmed if it is within the range of evidence presented.

(citations omitted) (internal quotations omitted). "In the absence of contrary evidence, the court should accept the value the parties assign to a marital asset." *King v. King*, 384 S.C. 134, 143, 681 S.E.2d 609, 614 (Ct. App. 2009) (citations omitted) (internal quotations omitted).

## 1. Sonoco Stock Options

The family court apportioned Wife her Sonoco stock options. Wife argues the family court made a clerical error in valuing the Sonoco stock options at $2,618.00, when they should have been valued at $2,168.35. Wife asserts the family court mistakenly transposed two numbers. Wife's quarterly statement as of December 31, 2015, reflects the value asserted by Wife. Husband concedes $2,168.35 is the correct valuation. Accordingly, $2,168.35 is the correct valuation for Wife's stock options.

## 2. Vehicles

Wife asserts the family court failed to take into account the debt owed on the parties' two vehicles when valuing them. Husband concedes the family court erred in not accounting for the debt associated with the vehicles, but differs with Wife as to the value and the amount of debt associated with each vehicle. We note the family court awarded each party their own vehicle.

The family court valued Wife's 2014 GMC Acadia at $23,439.00, which is the value Husband asserted in his proposed property division spreadsheet. Husband argues the debt associated with the Acadia was $22,414.00 resulting in net equity in the Acadia of $1,025.00. Wife asserts her vehicle should be valued at $26,325 according to the NADA guidelines as of May 2016 and the loan balance per Chase on May 27, 2015 was $26,217.64. Thus, Wife argues the net equity in the Acadia should be $107.36.

Similarly, the family court valued Husband's 2007 Silverado at $10,872.00, which Husband included in his proposed property division spreadsheet. While the family court did not account for the debt associated with the Silverado, Husband asserts the loan balance is $8,967.00, as reflected on his proposed property division spreadsheet. However, Wife argues the Silverado has a base retail value of $20,025 and a loan balance of $12,850.66 as of April 2015, according to information she submitted from the lienholder, giving Husband net equity in the truck of $8,420.66.

Both parties agree the valuation of the vehicles should reflect each vehicle's value net of its associated debt. *See King*, 384 S.C. at 144, 681 S.E.2d at 614 (recognizing the court properly valued the parties vehicles at zero when their value equaled the debt associated with the vehicles). The parties, however, disagree as to each vehicle's fair market value and the loan balances. While the family court may accept the value asserted by either party, the values asserted by Husband are unsubstantiated. Husband cites only to his proposed property division spreadsheet for support of his values and loan balances. Whereas, Wife provided information from the NADA and the lienholders to substantiate the values and loan balances she asserts. We adopt the value asserted by Wife and find the net equity in the Acadia is $107.36 and net equity in the Silverado is $8,420.66.

### 3. Disney Timeshare

Next, Wife argues the family court also failed to take into account the debt associated with the parties' Disney timeshare, which the family court awarded to Wife. The family court valued the timeshare at $17,500.00, but Wife submitted a loan transaction history from Disney Vacation Club reflecting a principal balance of $8,913.11 as of May 15, 2015, on the loan associated with the timeshare. Husband concedes this error in his brief. Thus, we find the parties' timeshare is worth $8,586.89.

### 4. Defined Benefit Pension Plans

Wife argues the family court erred in valuing both her and Husband's pension plans. Wife's Sonoco Pension Plan and Husband's State Retirement are defined benefit plans. Husband and Wife both agree these pension plans should be valued based on the present cash value, but disagree as to which calculation method to use.

As we explained in *Belton v. Belton*, 325 S.C. 456, 461, 481 S.E.2d 174, 177 (Ct. App. 1997),

> There is no set rule for how to determine present cash value. Typically, for determinations involving defined benefits (DB) plans, the trial court calculates, using actuarial evidence, the present value of the pension. The court further calculates the percentage of the present value attributable to the marriage and the appropriate equitable share of the other spouse.

(citations omitted) (internal quotations omitted).

At the hearing, both parties presented reports from their own CPAs valuing the other party's defined benefit plan. Both CPAs computed the present cash value of the other's plan using what the CPAs termed the "income tax method" and the "primary method." Under the primary method, the CPAs calculated the present cash value using the actuarial life tables in IRS publication 590 and those provided in section 19-1-150 of the South Carolina Code (2014).

The family court chose to adopt the present cash value calculation using the primary method and employing the actuarial life tables provided in section 19-1-150. Using this calculation, the present value of Husband's State Retirement is $441,193.83 and Wife's Sonoco Retirement is $908,799.56. Wife argues this calculation reflects a future value with an unspecified retirement age. However, after reviewing the calculations provided by the CPAs, the calculation under the primary method makes the same assumption with regard to retirement age as the income tax method. Both methods assume Husband will retire in ten years and Wife will retire in twenty-one years. In addition, Wife argues these calculations are based on a future date. Wife's CPA calculated the future value of Husband's State Retirement at retirement using the primary method to be $475,373.44 and then discounted that value based on the ten years until his retirement to find a present value of that amount of $441,193.83. Similarly, Husband's CPA calculated the future value of Wife's Sonoco Retirement to be $1,064,412.66 at retirement and then discounted that amount based on her twenty-one years until retirement resulting in a present value of $908,799.56. In light of these calculations, we do not agree with Wife's assertion that the calculations adopted by the family court fail to take into account the parties' retirement ages. Nor do we find the calculations represent a future value as opposed to the present value of a future income stream.

Wife argues the family court should have adopted the present cash values calculated under the income tax method valuing Husband's State Retirement at $315,708.31 and Wife's Sonoco Pension at $528,773.92. "A family court may

accept the valuation of one party over another, and the court's valuation of marital property will be affirmed if it is within the range of evidence presented." *Id.* (citing *Woodward v. Woodward*, 294 S.C. 210, 215, 363 S.E.2d 413, 416 (Ct. App. 1987)).

Both Husband's and Wife's CPAs presented the family court with three valuation methods.  The family court chose to adopt the primary method using the actuarial tables in section 19-1-150 to value both party's plans.  This method employs actuarial evidence to calculate present value.  In addition, both Husband's and Wife's CPAs employed this method and included it in the reports the parties submitted to the court.  We find this method reasonable for the determination of the present value of a defined benefit plan and within the range of the evidence presented.  Thus, the family court did not err in relying on the present values calculated using the primary method and South Carolina actuarial tables to value the defined benefit plans.

## B. Equitable Distribution

The family court ordered equitable division resulting in a 60/40 split, with Wife receiving sixty percent of the marital estate and Husband receiving forty percent.  Neither party contests these percentages.  Wife, however, argues that if this court assents to her arguments concerning the asset valuations as addressed above, this court should reapportion the equitable division to maintain the 60/40 division.

> In making an equitable distribution of marital property, the court must: (1) identify the marital property to be divided between the parties; (2) determine the fair market value of the property; (3) apportion the marital estate according to the contributions, both direct and indirect, of each party to the acquisition of the property during the marriage, their respective assets and incomes, and any special equities they may have in marital assets; and (4) provide for an equitable division of the marital estate, including the manner in which the distribution is to take place.

*Gardner v. Gardner*, 368 S.C. 134, 136, 628 S.E.2d 37, 38 (2006) (citing *Johnson v. Johnson*, 296 S.C. 289, 293, 372 S.E.2d 107, 110 (Ct. App. 1988)).

Husband acknowledged the valuations of Wife's Sonoco stock options, the net equity in the vehicles, and the Disney timeshare are incorrect and we agree these valuations require adjustments as explained above.  In addition, Husband notes the

family court miscalculated the total marital estate to be $2,089,800.00.  He correctly asserts that based on the family court's valuations, the marital estate totals $2,049,633.00.

After revaluing the stock options, the vehicles, and the timeshare, the total marital estate is valued at $2,054,654.26, rather than $2,089,800.00 as determined by the family court.  However, assigning the same assets to Husband and Wife as assigned by the family court (including a $206,703 QDRO payment from Wife's 401(k)), we compute Wife receiving 59.78% and Husband receiving 40.22% of the marital estate.  Rounding to the nearest percentage point, the revaluation does not result in a shifting of the percentage awarded in favor of one party over the other.  Looking at the distribution in terms of dollars as opposed to percentages, Wife should receive $1,232,792.56 in marital assets as opposed to the $1,228,285.60 the family court awarded to her.  Similarly, Husband should receive $821,861.70 in marital assets rather than the $826,368.66 the family court awarded to him.  This change entitles Wife to receive a balancing payment from Husband of $4,506.96.

## C. Alimony

Wife argues the family court erred in awarding Husband $3,000 per month in periodic alimony.  According to our supreme court, "Alimony is a substitute for the support which is normally incident to the marital relationship.  Generally, alimony should place the supported spouse, as nearly as practical, in the same position as enjoyed during the marriage." *Craig v. Craig*, 365 S.C. 285, 292, 617 S.E.2d 359, 362 (2005) (citations omitted).

In determining whether to award alimony, section 20-3-130(C) of the South Carolina Code (2014) requires family courts to consider the following factors:

> (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses and needs of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; and (12) prior support obligations; as well as other factors the court considers relevant.

*Butler v. Butler*, 385 S.C. 328, 338-39, 684 S.E.2d 191, 196 (Ct. App. 2009) (citing S.C. Code Ann. § 20-3-130(C) (Supp. 2008)).

Wife argues the family court erred in awarding Husband alimony. Primarily, Wife argues Husband does not need alimony and his income is sufficient to cover his expenses, particularly because she has custody of their three children. Expenses of the party requesting alimony are one factor a court must consider. In this case, Husband's expenses are lower than Wife's given that he does not have to maintain the marital home and he did not receive custody of the children. Husband is required to pay $880 per month in child support and the family court awarded Husband visitation every other Thursday from the release of school to Monday morning and three weeks in the summer. Husband testified he currently lives in a two-bedroom rental home and would like to purchase a home that will accommodate the three children. Purchasing a home would likely increase Husband's monthly expenses.

Looking to the other factors in section 20-3-130(C), the marriage lasted for fifteen years, both parties are in good physical and mental health, both parties are college educated, and both worked for the same employers throughout the marriage. Neither Husband nor Wife have significant non-marital assets. The family court did not find fault or marital misconduct by either party. There is a substantial disparity in income and earning potential between the parties. The record reflects Wife's continued sizeable earnings with her income ranging from $142,412.32 to $191,532.35 during the five years leading up to the divorce. Husband's earnings only ranged from $37,096.07 to $39,795.56 during the same period. The parties enjoyed a comfortable standard of living during the marriage. They lived in a large home with a pool, took family vacations regularly, and were able to make significant contributions toward their retirement savings. The record reflects Wife's ability to meet her needs while supporting Husband at the standard of living he enjoyed during the marriage.

Based on a review of the factors and in light of the record before us, the statutory factors weigh in favor of an alimony award to Husband, especially considering the income disparity and the parties' standard of living during the marriage. Further, in keeping with the purpose of alimony, to place the supported spouse in a position similar to that enjoyed during the marriage, we agree with the family court's award of alimony to Husband.

Wife also argues the family court erred in the amount of alimony awarded to Husband. Initially, she asserts the family court should not have considered her bonuses when determining her income for purposes of awarding alimony because

they are not guaranteed.  However, in other cases, this court considered bonuses as part of a party's income for purposes of alimony.  *See Lineberger v. Lineberger*, 303 S.C. 248, 250, 399 S.E.2d 786, 787 (Ct. App. 1990) (affirming the family court's award of fifteen percent of the husband's net bonuses to the wife "because the amounts are different each year and the bonuses have been a part of the overall income of the parties for many years.");  *Harmon v. Harmon*, 290 S.C. 396, 399, 350 S.E.2d 925, 926 (Ct. App. 1986) (considering the husband's substantial yearly bonuses as part of his income in denying his request for modification of alimony awarded to the wife).  Wife testified bonuses made up a large portion of her overall compensation over the years.  She testified that in 2010, fifty percent of her compensation was bonus income.  We find the family court properly considered Wife's bonus income.

Alternatively, Wife argues the family court miscalculated her bonus income resulting in a substantial overstatement of her income.  The family court computed Wife's monthly salary as $21,000 per month, including $13,064.00 in gross monthly wages and approximately $9,000 per month in bonus wages.  Wife argues the court's determination is incorrect as it miscalculates her bonus income.  Wife's May 2016 paystub, which she attached to her financial declaration submitted to the court, reflects gross salary pay as $13,064.00.  While the pay stub states Wife's bonus earnings for that period are $0, it reflects a year to date bonus of $47,351.00.  The family court computed the monthly bonus by dividing this amount by five.  We agree with Wife that this was in error.

According to Wife, Sonoco pays bonuses in February or March based on prior year performance.  The family court should have annualized the bonus over a year, as opposed to five months.  The monthly amount attributable to Wife's bonus should have been approximately $3,945.91, which results in income of approximately $17,000 per month as opposed to $21,000—approximately a nineteen percent decrease in income.  Based on this significant adjustment in income, we reduce Husband's monthly alimony award to $2,700.  This reduction is to be retroactive to the date Wife's alimony obligation began, August 1, 2016.  Thus, assuming Wife's first payment of the reduced alimony award occurred on September 1, 2019, she is entitled to an additional credit of $300 per month for each month from August 2016 to August 2019, for a total of thirty-seven months.  The total amount of arrearages due for this thirty-seven-month period is $11,100.  Accordingly, until

such arrearage is satisfied, we further reduce Wife's alimony obligation by $300, to $2,400 per month.[1]

### D. Attorney's Fees

In *Bennett v. Rector*, 389 S.C. 274, 284, 697 S.E.2d 715, 720 (Ct. App. 2010), we noted that

> [i]n deciding whether to award attorney's fees, the family court should consider (1) each party's ability to pay his or her own fees; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the fees on each party's standard of living.

Wife argues if this court reverses the family court's decision, we should reverse Husband's attorney's fees award due to the beneficial result obtained by Wife. We reversed the family court in regard to the valuation of the stock options, the vehicles, and the Disney timeshare. In addition, we determined the family court's miscalculation of Wife's monthly income warrants a reduction in the alimony awarded. While our corrections to the valuations of several marital assets and the reduction in alimony benefit Wife, we do not find these computational corrections warrant a reversal of the attorney's fees award. These changes to the family court's order do not significantly affect the financial conditions of the parties, their ability to pay, or have an impact on their standard of living. In addition, Husband incurred attorney's fees of over $10,000, well in excess of those awarded. We decline to reverse the attorney's fees awarded to Husband.

## CONCLUSION

Based on our findings above, the family court erred in its valuations of Wife's stock options, the vehicles, and the Disney timeshare. Based on these adjustments,

---

[1] Assuming Wife began paying the reduced alimony award on September 1, 2019, Wife's alimony obligation will be $2,400 per month until September 1, 2022. Thereafter, her monthly obligation will increase to $2,700. However, depending upon when Wife began paying the reduced award, Wife may be entitled to additional months' credit. For instance, if Wife does not begin paying the reduced award until January 1, 2020, she would be entitled to credit from August 2016 until December 2019 for a total of forty-one months' and $12,300 credit. Alternatively, Husband may elect to pay this credit in a lump sum.

we find Husband is required to pay Wife $4,506.96.  In addition, we find the family court did not err in awarding Husband permanent periodic alimony, but based on the admitted differences in valuations and the family court's error in calculating Wife's bonus income, we find it appropriate to change the alimony award to $2,700 per month, to apply retroactively beginning the date Wife's alimony obligation began.  Based on our analysis of the necessary factors, we affirm the family court's award of attorney's fees to Husband.  Accordingly, the family court's order is

**AFFIRMED IN PART AND REVERSED IN PART.**

**SHORT and MCDONALD, JJ., concur.**